## J. P. MURPHY

v.

## INEXCO OIL COMPANY et al.

### Civ. A. No. 76–H–1290.

United States District Court,
S. D. Texas,
Houston Division.

March 15, 1977.

Rowland & Keim, Sam E. Rowland, Houston, Tex., for plaintiff.

Butler, Binion, Rice, Cook & Knapp, Frank J. Knapp, Fletcher Etheridge, Arthur S. Berner, Houston, Tex., for defendants.

**1016**

OPINION

STERLING, District Judge.

The Opinion of this Court dated January 19, 1977, is withdrawn and the following substituted in its place. The minor changes made are merely for clarification and in no way alter the result.

This case involves an alleged breach of an employee benefit contract, violation of the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001, *et seq.*, and violation of ERISA's predecessor, the Welfare and Pension Plans Disclosure Act, 29 U.S.C. §§ 301–309. Plaintiff alleges diversity jurisdiction, federal question jurisdiction and ERISA jurisdiction, 29 U.S.C. § 1132(e), to which defendants have responded with a motion to dismiss for lack of subject matter jurisdiction. The diversity allegation is without foundation from the face of the complaint. The other jurisdictional claims raise an issue which bears brief discussion because of the dearth of authority on the subject. That issue is whether the plan in this case (the Westland plan) is a "pension plan" as defined in ERISA.

Defendants, citing the Westland Royalty Participation Agreement and the complaint, accurately describe the plan as a gratuitous, supplemental compensation program. Under the Westland plan, which embodies the informal agreements of its predecessor, a de facto oil and gas royalty pool for the benefit of employees, the employer oil company assigns royalty interests to Westland Royalty Company for the benefit of the employees. The interests assigned are in a particular drilling prospect, and royalty payments are made not from the employer's funds, but from the oil well production proceeds.

The assignment of an interest in a project is discretionary, based on the employer Management Committee's and Board of Directors' assessment of the employee's contribution to the company, and is commensurate to the employee's work on the project. Finally, the interests, which vest at assignment, are assigned only while a person is employed. After a company-approved termination such as retirement, the employee is assigned no new interests but can continue to participate in the ones assigned to him before retirement.

It is undisputed that the employees receive annual payments during employment and possibly in retirement, post-employment participation depending on the continued production of the well in which an employee has an interest. Defendants contend that the annual payments are current compensation bonuses, and plaintiff argues that they are merely an incidental benefit of a pension plan. A pension plan as defined in ERISA is a ". . . program (A) that provides retirement income to employees, or (B) results in a deferral of income by employees for periods extending to the termination of covered employment or beyond, regardless of the method of calculating the contributions made to the plan, the method of calculating the benefits under the plan or the method of distributing benefits from the plan." 29 U.S.C. § 1002(2).

Plaintiff argues that the program provides retirement income by allowing continued participation and thus falls within § 1002(2)(A), which does not expressly exclude a plan featuring current income in addition to retirement income, but the clause (B) phrase "deferral of income by employees" does exclude plans featuring current income as well as retirement income. Plaintiff would reply that clauses (A) and (B) are joined by the disjunctive conjunction "or" indicating that either one or the other is requisite, but not necessarily both, and that although the two clauses are not necessarily mutually exclusive, they are distinguishable by their applicability to different fact situations. Defendant would then contend that "or" means "or, in other words", so that (B) merely clarifies (A). Clearly one cannot resolve this issue by limiting the inquiry to the naked statutory language of § 1002(2). The Regulations promulgated under ERISA must also be considered.

Defendants claim that the Westland plan is a bonus plan, expressly excluded from

ERISA by Regulation 2510.3–2(c) of the Department of Labor, as amended, 40 Fed. Reg. 34532 (1975), which provides that a " 'pension plan' shall not include payments made by an employer to some or all of its employees as bonuses for work performed, unless such payments are systematically deferred to the termination of the covered employment or beyond, or so as to provide retirement income to employees." Before determining whether the Westland plan conforms to this Regulation, it must be determined whether this plan is in fact a bonus plan.

At paragraph 18 of the complaint, plaintiff expressly states that the plan is an inducement to lure new employees and to retain the old ones, but any benefit plan, whether bonus or pension, would have this effect. More helpful is the contract, which says that the assignments are based on length of service, job classification and special contributions to the success of the venture. Paragraph 19 of the complaint likewise states that the size of the interest assigned is "commensurate with the work that an employee did on the project." Accordingly, Regulation 2510.3–2(c) is applicable.

Regulation 2510.3–2(c) shows that the distinction between clauses (A) and (B) of § 1002(2) is not deferral of income vs. retirement income but deferral to employment termination vs. deferral so as to provide retirement income. In other words, the Regulation recognizes deferral of income as being the key identifying feature of a "pension plan".

One also learns from the Regulations that generation of possible retirement income is not conclusively indicative of a "pension plan", contrary to plaintiff's suggestion. Regulation 2510.3–2(b) distinguishes a "pension plan" from a "severance pay plan", both of which involve employer payments to a retired employee. The Westland plan beneficiaries may continue to participate after employment termination, but the requisite systematic deferral of income is absent.

Unfortunately, ERISA's legislative history and purpose shed little light on the issue here. Defendants maintain that ERISA's purpose, to insure adequate funding and vesting for employee protection, bears no relation to the Westland gratuitous bonus plan for the assignment of annually payable royalty interests. This position, however, only begs the question of ERISA's applicability because the plaintiff is complaining of loss of plan benefits caused by the defendants' alleged manipulation of the interests in a certain drilling prospect. Plaintiff claims that new interests have been created in the same prospect in which plaintiff already has a vested interest and that the new interests, assigned to other people, cancel plaintiff's previously acquired interest. (Complaint, ¶¶ 21 and 22) That, however, is a matter of contract which is in no way affected by ERISA. A plan funded by oil well royalties is by nature speculative and uncertain and is thus inherently inconsistent with ERISA's purpose of insuring that employees will have financial security and predictability in retirement.

Title 29 U.S.C. § 302(a)(2), the predecessor of 29 U.S.C. § 1002(2), states that the term "employee pension benefit plan" includes "any profit sharing plan which provides benefits at or after retirement". Two obvious questions, then, are whether the Westland plan is a profit sharing plan, and because § 1002(2) does not specifically mention profit sharing plans, what is the effect of this omission. The answer to both questions is that the scope of § 1002(2) is broader than § 302(a)(2). Section 1002(2) covers any plan that "provides retirement income or results in a deferral of income by employees . . .", including profit sharing plans that provide retirement benefits. The two sections are not inconsistent; § 1002(2) subsumes § 302(a)(2), and though there were no regulations promulgated under § 302(a)(2), the same analysis of the "retirement income" language discussed above with respect to § 1002(2) should be applicable to § 302(a)(2). Neither plaintiff nor defendants have argued to the contrary.

For these reasons the Court finds that it lacks any basis for jurisdiction of this case, which boils down simply to a complaint for an alleged breach of the disclosure and possibly other provisions of the Westland Royalty Participation Agreement. The case must be dismissed, rendering it unnecessary to consider the class action allegations of the complaint.